SILVER, Appellant,

v.

JEWISH HOME OF CINCINNATI, d.b.a. Cedar
Village Nursing Home, et al., Appellees.

[Cite as *Silver v. Jewish Home of Cincinnati*, 190 Ohio App.3d 549, 2010-Ohio-5314.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2010–02–015.

Decided Nov. 1, 2010.

550

John H. Metz, for appellant.

Rendigs, Fry, Kiely & Dennis, Paul W. McCartney, and Vaseem S. Hadi, for appellee Jewish Home of Cincinnati.

McGowan & Jacobs, L.L.C., and Jack C. McGowan, for appellee Scott Kotzin.

Frost Brown Todd, L.L.C., and Douglas R. Dennis; and Stradley, Ronon, Stevens & Young, L.L.P., and Francis X. Manning, for appellee United Healthcare Insurance Company of Ohio.

WILLIAM W. YOUNG, Presiding Judge.

{¶ 1} Plaintiff-appellant, Barry A. Silver, appeals the decision of the Warren County Court of Common Pleas granting summary judgment to defendant-appellee, United Health Group, Inc., d.b.a. United Healthcare and United Healthcare Insurance Company of Ohio ("United"), and a jury verdict in favor of defendants-appellees, Scott Kotzin, D.O., and Jewish Home of Cincinnati, Inc. d.b.a. Cedar Village Nursing Home, in a negligence action.

{¶ 2} This action arose from appellant's discharge from Cedar Village Nursing Home, a nursing facility operated by Jewish Home, upon the order of Dr. Kotzin, the attending physician. Appellant claims that he was prematurely discharged

from the nursing home (where he was rehabilitating for a fracture), which in turn led to a fall in his home several weeks later, additional injuries, hospitalization, and rehabilitation. Appellant also claims that United, his health insurer, improperly influenced the decision to discharge him. The facts are as follows:

{¶ 3} Following surgery to repair a fractured ankle, appellant was admitted in the nursing home for rehabilitation on August 19, 2005. Dr. Kotzin was his attending physician and saw appellant on August 20 and September 7. On the latter day, upon learning that appellant was to be discharged soon, Dr. Kotzin wrote the following in appellant's progress notes:

{¶ 4} "Patient very concerned about possible discharge on Friday. This took me by surprise. * * * Patient is non weight bearing for at least 3 more weeks. * * * No one at home to help. Sending patient home would be a terrible mistake. He would be at significant risk for further injury. If patient is forced to leave by Insurance company it is my medical legal opinion, they would be liable. Patient required continued skilled care."

{¶ 5} Dr. Kotzin contacted United on appellant's behalf and talked to Stephen Lucht, M.D., a physician working for United. Dr. Kotzin subsequently found out from the nursing home staff that appellant lived with his son and therefore had help at home, was independent with transfers, was functional with a wheelchair, and required only custodial care. Based upon this new information, Dr. Kotzin signed the discharge order on September 9, and appellant was discharged. On October 22, 43 days after his discharge, appellant fell at home and injured his legs. He was hospitalized for 19 days before undergoing rehabilitation.

{¶ 6} On October 19, 2007, appellant filed a complaint against Dr. Kotzin, Jewish Home, and United alleging that Dr. Kotzin and Jewish Home were negligent and that United had breached its contract when it prematurely discharged appellant from the nursing home. United moved for summary judgment on the ground that Dr. Kotzin's decision to discharge appellant was made solely by him and was uninfluenced by United or whether appellant had insurance coverage. Appellant responded by filing a Civ.R. 56(F) motion to postpone consideration of United's motion until further discovery and a motion to compel discovery. On July 17, 2008, the trial court granted the motion to compel discovery "only insofar as it goes to Plaintiff's desire to depose the employees at United who were involved in the 'peer to peer intervention' United had with Dr. Kotzin."

{¶ 7} On November 14, 2008, United renewed its motion for summary judgment. Appellant filed a memorandum opposing summary judgment and a second Civ.R. 56(F) motion to postpone consideration of summary judgment until further discovery. On December 31, 2008, the trial court declined to postpone consideration of United's motion and instead granted summary judgment to United.

{¶ 8} Appellant's claims against Dr. Kotzin and Jewish Home proceeded to a jury trial, which lasted six days. On November 23, 2009, the jury found in favor of Dr. Kotzin and Jewish Home. The jury specifically found that neither Dr. Kotzin nor the nursing home was negligent.[1] Appellant moved for a new trial under Civ.R. 59(A)(1), (2), (6), (7), and (9), and/or for a judgment notwithstanding the verdict ("JNOV").[2] On January 21, 2010, the trial court denied the motion.

{¶ 9} Appellant appeals, raising seven assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} "The trial court erred in granting summary judgment to defendant United Healthcare to the prejudice of appellant."

{¶ 12} Appellant argues that the trial court erred in granting summary judgment to United. Based on Dr. Kotzin's progress note from September 7, 2005, appellant asserts that United "orchestrated [his] premature discharge," not Dr. Kotzin. Appellant also argues that the trial court abused its discretion when it overruled his second Civ.R. 56(F) motion to postpone consideration of summary judgment.

{¶ 13} On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Burgess v. Tackas* (1998), 125 Ohio App.3d 294, 296, 708 N.E.2d 285. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. The movant bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once this burden is met, the nonmovant has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id.

{¶ 14} In support of its motion for summary judgment, United relied upon the deposition testimony of Dr. Kotzin and appellant. In his memorandum opposing

---

1. Along with verdict forms, interrogatories were submitted to the jury. With regard to each defendant (Dr. Kotzin and the nursing home), the interrogatories asked the jury: (1) "Was [defendant] negligent?"; (2) "In what way was [defendant] negligent?"; and (3) "Did the negligence of [defendant] directly and proximately cause any injury to Plaintiff?" With regard to both Dr. Kotzin and the nursing home, the jury answered "no" to Interrogatory No. 1. As a result, the jury did not answer Interrogatories Nos. 2 and 3 for either Dr. Kotzin or the nursing home.

2. Appellant also moved the trial court to reconsider its previous grant of summary judgment in favor of United. The trial court denied the motion as untimely and without merit.

summary judgment, appellant relied upon the deposition testimony of Dr. Kotzin and Dr. Lucht.

{¶ 15} In his deposition, Dr. Kotzin explained that he wrote the September 7 progress note based on appellant's assertion that he had no one at home to help him. As a result, Dr. Kotzin thought it was inappropriate to discharge appellant. However, once Dr. Kotzin learned over the next two days that appellant lived with his son and therefore had help at home, was independent with transfers, was functional with a wheelchair, and required only custodial care, he decided that appellant could be discharged on September 9. Dr. Kotzin testified that United did not instruct him to discharge appellant. Nor did United force appellant's discharge. Dr. Kotzin further testified that the fact that United was no longer going to cover appellant's stay had no role whatsoever in his decision to discharge appellant.

{¶ 16} Appellant testified that he is an administrator at two nursing homes and a social worker. Based on his professional experience, appellant admitted that the responsibility to decide when or whether to discharge a patient rests solely with the attending physician and not with an insurance company. Appellant testified that Dr. Kotzin was responsible for his discharge; United had no responsibility for his alleged premature discharge.

{¶ 17} Upon learning that Dr. Kotzin was uncomfortable on September 7 with discharging appellant, Dr. Lucht called Dr. Kotzin the next day for a peer-to-peer conversation. Dr. Kotzin told him he was concerned about appellant's safety and readiness, and that he needed more information. On September 9, Dr. Kotzin called back to let him know he was going to discharge appellant and that he was satisfied with discharging appellant at that time. Dr. Lucht testified that the ultimate decision to discharge a patient rests solely with the attending physician and not with the insurance company, even when their opinions conflict as to whether the patient should be discharged.

{¶ 18} In light of the foregoing, we find that the trial court properly granted summary judgment to United.

{¶ 19} Appellant also challenges the trial court's denial of his second Civ.R. 56(F) motion to postpone consideration of United's motion for summary judgment.

{¶ 20} Civ.R. 56(F) "affords a party a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it." *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 168–169, 13 O.O.3d 191, 392 N.E.2d 1316. "[A] motion for a continuance to conduct discovery under Civ.R. 56(F) must be supported by a proper affidavit. Mere allegations requesting a

continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. Instead, the party seeking the Civ.R. 56(F) continuance must state a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance." (Citations omitted.) *St. Joseph's Hosp. v. Hoyt,* Washington App. No. 04CA20, 2005-Ohio-480, 2005 WL 293800, ¶ 24.

{¶ 21} A trial court maintains the discretion to manage the discovery process. *Discover Bank v. Brockmeier,* Warren App. No. CA2006–07–078, 2007-Ohio-1552, 2007 WL 959907, ¶ 38, citing *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659. Granting a continuance under Civ.R. 56(F) is within the discretion of the trial court and is not mandatory. *Brockmeier* at ¶ 38. Therefore, an appellate court will not reverse a trial court's decision regarding the discovery process absent an abuse of discretion. Id. Where no affidavit is presented to support a motion for an extension under Civ.R. 56(F), a court may not grant an extension pursuant thereto. *Vilardo v. Sheets,* Clermont App. No. CA2005–09–091, 2006-Ohio-3473, 2006 WL 1843585, ¶ 29.

{¶ 22} The trial court overruled appellant's second motion on the following grounds: "On February 14, 2008 Plaintiff's counsel participated in the formulation of a Scheduling Order. The discovery cut-off date was established as October 14, 2008. As directed to other counsel on other motions in this case, they participated in the creation of an Order, not a suggestion. Operating outside that Order is at the peril of the attorneys/parties. Further, on December 2, 2008, Plaintiff filed with the court an AGREED EXTENSION OF TIME TO RESPOND TO SUMMARY JUDGMENT agreeing to an additional period of 14 days to respond. The court infers from this document an ability to do so. This makes counsel's affidavit [sic] that he needs additional time to complete a depositions [sic] appear somewhat disingenuous. * * * [Plaintiff's counsel representations in the second Civ.R. 56(F) motion that two depositions are soon to be either completed or scheduled] cannot be reconciled with the December 2, 2008 extension other than through an inference of delay and/or failure to comply with the scheduling order." (Emphasis sic.)

{¶ 23} Based upon the record, we cannot say that the trial court abused its discretion when it overruled appellant's second Civ.R. 56(F) motion on the foregoing grounds. We note that both Jewish Home and Dr. Kotzin also unsuccessfully sought additional time for further discovery. Their motions were also overruled on the basis that they had violated the scheduling order, which was an order and not a suggestion. In addition, appellant failed to provide an affidavit in support of his second motion. Thus, the motion was not in compliance with Civ.R. 56(F) and was properly denied for that reason. See *Cook v. Toledo*

*Hosp.,* 169 Ohio App.3d 180, 2006-Ohio-5278, 862 N.E.2d 181; *Vilardo,* 2006-Ohio-3473, 2006 WL 1843585.

{¶ 24} Appellant's first assignment of error is overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} "The trial court erred in denying a motion for new trial/JNOV since the evidence was so overwhelmingly contrary to the verdict and against the manifest weight of the evidence."

{¶ 27} Assignment of Error No. 4:

{¶ 28} "The trial court erred in not granting a new trial or JNOV given the misconduct of trial counsel."

{¶ 29} We note at the outset that although the captions of appellant's second and fourth assignments of error refer to the trial court's failure to grant a new trial or judgment notwithstanding the verdict, appellant's analysis under both assignments of error addresses only the motion for a new trial. We will therefore address only the trial court's denial of appellant's motion for a new trial.

{¶ 30} Appellant argues in his second assignment of error that the verdict was against the manifest weight of the evidence and thus the trial court should have granted a new trial on that basis pursuant to Civ.R. 59(A)(6).[3] Appellant claims that the evidence shows his premature discharge from the nursing home was solely orchestrated by United. Appellant further submits that the trial testimony of Dr. Kotzin and Pam Tenhundfeld, R.N., a case manager at the nursing home, was contradicted by medical records, was false, and was for the purpose of misleading the jury.

{¶ 31} "Because a trial court has broad discretion in determining whether a jury verdict is against the manifest weight of the evidence, a trial court's ruling on a motion for a new trial based upon the weight of the evidence will not be reversed absent an abuse of discretion. Moreover, when a jury's [verdict] is supported by some competent, credible evidence going to the essential elements of the case, [the verdict] will not be reversed by a reviewing court as being against the manifest weight of the evidence." (Citations omitted.) *Ste-*

---

3. Appellant also speculates that "while one would not like to think so in this Age, plaintiff being a Hasidic Jew, may well have prejudiced the jury to turn a blind eye to the substantive evidence. Such a verdict has no place in our legal system and should not be permitted to stand and should be reversed." Appellant made similar assertions in his motion for a new trial; the assertions were met with criticism by the trial court in denying appellant's motion: "Troubling to the court are the wholly unsubstantiated and speculative assertions that (1) the jury lost its way, (2) the jury did not abide by the court's instructions and merely 'winged' it, (3) Plaintiff's religion or appearance was a factor relied upon by the jury."

*phens v. Vick Express, Inc.*, Butler App. Nos. CA2002–03–066 and CA2002–03–074, 2003-Ohio-1611, 2003 WL 1689602, ¶ 22. Because the trier of fact is best able to view the witnesses and observe their demeanor when weighing the credibility of the offered testimony, there is a presumption that the findings of the trier of fact are correct. *Cropper v. Jewell*, Clermont App. No. CA2008–09–088, 2009-Ohio-3683, 2009 WL 2231804, ¶ 16.

{¶ 32} In support of his argument that the "false" testimony of Dr. Kotzin and case manager Tenhundfeld warranted a new trial, appellant cites *Tanzi v. New York Cent. Rd. Co.* (1951), 155 Ohio St. 149, 44 O.O. 140, 98 N.E.2d 39, in which the Ohio Supreme Court held, "[J]uries have the duty to detect and disregard false testimony. * * * [I]n the event that a jury does not detect and disregard false testimony, the trial court and the Court of Appeals each has a clear duty to grant a new trial on the weight of the evidence where it appears probable that a verdict is based upon false testimony." Id. at 153, 44 O.O. 140, 98 N.E.2d 39. "Whether the testimony of a witness or of a party is false or mistaken is a question for the jury or other trier of the facts." Id. at paragraph two of the syllabus.

{¶ 33} Upon thoroughly reviewing the voluminous record, we find that the trial court did not err in denying appellant's motion for a new trial under Civ.R. 59(A)(6). Appellant asserts that the trial testimony of Dr. Kotzin and case manager Tenhundfeld were false and for the purpose of misleading the jury. Upon reviewing the record, we disagree. While their testimony may have been at times inconsistent, contradictory, and seemingly contradicted by medical records, there is an insufficient basis for a determination that their testimony was false. "If apparent contradictions by witnesses justified a new trial, courts would be besieged with motions for new trials because such evidence is found in almost every trial." *Markan v. Sawchyn* (1987), 36 Ohio App.3d 136, 138, 521 N.E.2d 824.

{¶ 34} Furthermore, as the trial court aptly stated in denying appellant's motion, "[t]he reconciliation of the testimony and the documents is uniquely within the province of the jury in accordance with the instructions of law given to it." It is well established that as the trier of fact, "[t]he jury can accept all, a part or none of the testimony offered by a witness whether it is expert opinion or eyewitness fact, whether it is merely evidential or tends to prove the ultimate fact. In other words, '[t]he jury is the sole judge of the weight of the evidence and the credibility of witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest.'" *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 82, 40 O.O.2d 87, 228 N.E.2d 304; *Stephens*, 2003-Ohio-1611, 2003 WL 1689602.

{¶ 35} As stated earlier, a trial court is vested with broad discretion in deciding whether to grant a new trial on the basis of the weight of the evidence. See *Stephens*. Only when the trial court's denial of the motion is the product of an unreasonable, arbitrary, or unconscionable attitude can it be said that the court abused its discretion. See *Lanham v. Wilson* (Aug. 12, 1991), Madison App. No. CA90–11–024, 1991 WL 153193. Upon reviewing the record, we find that some competent and credible evidence supports the jury's verdict in favor of Dr. Kotzin and Jewish Home. Accordingly, the trial court did not abuse its discretion in failing to grant a new trial pursuant to Civ.R. 59(A)(6).

{¶ 36} Appellant's second assignment of error is overruled.

{¶ 37} Appellant argues in his fourth assignment of error that the trial court erred in denying his motion for a new trial under Civ.R. 59(A)(2) given the misconduct of the respective trial counsel for Dr. Kotzin and Jewish Home during opening statements, closing arguments, and at trial. Appellant takes issue with the conduct of trial counsel for Jewish Home on three different occasions and with the conduct of Dr. Kotzin's trial counsel on one occasion. However, the record shows that the alleged improper question appellant attributed to Dr. Kotzin's trial counsel and defended on appeal by that same counsel was in fact asked by counsel for Jewish Home. We will therefore address only the alleged misconduct of counsel for Jewish Home.

{¶ 38} Civ.R. 59(A)(2) provides that a new trial may be granted upon a showing of misconduct by the prevailing party. The determination whether alleged misconduct of counsel was sufficient to prejudice the jury is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Coyne v. Stapleton*, Clermont App. No. CA2006–10–080, 2007-Ohio-6170, 2007 WL 4099431, ¶ 11. Before a reviewing court will disturb the exercise of the trial court's discretion, the record must clearly demonstrate highly improper arguments by counsel that tend to inflame the jury. Id.; *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 459 N.E.2d 1315.

### Opening Statements

{¶ 39} Appellant first claims that during opening statements, counsel for Jewish Home inappropriately mentioned the fact that a board member of the nursing home paid appellant's $5,000 deductible because appellant did not have the money. Appellant's counsel objected to the statement; following a sidebar conference, the trial court instructed the jury to disregard the statement. Appellant also claims that counsel for Jewish Home inappropriately referred to a nursing-home entry depicting appellant with "a history of being dependent of his friends and relatives for money over the years and [as someone who] can be very

abrupt with them." Appellant's objection to the statement was overruled on the ground that the entry was included in the parties' joint exhibits.

{¶ 40} It is well settled that counsel is afforded considerable latitude in making an opening statement; however, counsel is not permitted to make statements of law or fact that are obviously erroneous. *Choate v. Tranet, Inc.*, Warren App. No. CA2005–09–105, 2006-Ohio-4565, 2006 WL 2535770, ¶ 15. A trial court's rulings with respect to opening statements will not be reversed on appeal absent an abuse of discretion. Id.

{¶ 41} We find that the foregoing statements made by counsel for Jewish Home during opening statements did not warrant a new trial. The trial court instructed the jury to disregard the reference to the $5,000 deductible. The trial court also instructed the jury at the beginning of the trial and as part of its jury instructions that opening statements by counsel are not evidence. A jury is presumed to have properly followed instructions given by a trial court. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 195, 559 N.E.2d 1313. While the reference to the nursing-home entry was unwarranted, the entry was included in the parties' joint exhibits and was thus part of the evidence. No objection was made to the introduction of this particular exhibit, and no request was made that this entry be redacted. Further, we find that the reference does not qualify as the type of egregious misconduct or behavior warranting a new trial.

### Misconduct During Trial

{¶ 42} Appellant claims that during cross-examination of appellant, counsel for Jewish Home (1) inappropriately brought up the issue of the $5,000 deductible and (2) improperly asked appellant whether by calling the Ohio Department of Health to complain about his discharge, he thought the agency was going to force the nursing home to accept him back.

{¶ 43} With regard to the $5,000–deductible reference, the record shows that it was brought up by appellant himself in reply to a question about his estimated length of stay at the nursing home. Appellant did not object until counsel for Jewish Home inquired about the nursing home board member who had paid the deductible. The trial court overruled the objection on the ground that the $5,000 deductible was first brought up by appellant. Subsequently, counsel for Jewish Home briefly questioned appellant about the board member. After review of the record, we find no indication that the cross-examination on the $5,000 deductible created any irregularity in the proceedings. Nor do we find that the jury was improperly persuaded by the reference or that appellant was prejudiced by the reference.

{¶ 44} When counsel for Jewish Home questioned appellant about his call to the Ohio Department of Health, appellant objected. The trial court sustained the objection and instructed the jury to disregard the question. Counsel did not revisit the subject or argue it to the jury. We find no prejudicial error. "Error cannot be predicated on objections that have been sustained by the trial court." *Werden v. Children's Hosp. Med. Ctr.*, Hamilton App. No. C–040889, 2006-Ohio-4600, 2006 WL 2571942, ¶ 54.

### Closing Argument

{¶ 45} Appellant claims that during closing arguments, counsel for Jewish Home once again inappropriately mentioned the fact that a board member of the nursing home had paid appellant's $5,000 deductible because appellant did not have the money. Appellant's objection to the statement was overruled on the ground that it was part of the evidence. Counsel for Jewish Home then commented on how appellant had paid back that kindness. The trial court sustained appellant's objection to the comment.

{¶ 46} It is well settled that counsel is afforded wide latitude in closing arguments. *Choate*, 2006-Ohio-4565, 2006 WL 2535770 at ¶ 19. However, remarks that are not supported or warranted by the evidence and that are calculated to arouse passion or prejudice may constitute prejudicial error. *Stephens*, 2003-Ohio-1611, 2003 WL 1689602 at ¶ 32. "The determination of whether the bounds of permissible argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court." *Pang*, 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph three of the syllabus. Absent an abuse of discretion, a trial court's rulings with respect to closing arguments will not be reversed on appeal. *Choate* at ¶ 19.

{¶ 47} We find that the foregoing statement and comment made by counsel for Jewish Home during closing arguments did not warrant a new trial. The fact that a board member of the nursing home had paid the deductible was supported by the evidence, as appellant had testified himself about the payment. With regard to the comment about appellant's paying back that kindness, appellant objected to the comment, and the trial court sustained the objection. The trial court also instructed the jury at the beginning of closing arguments and as part of its jury instructions that closing arguments by counsel are not evidence. A jury is presumed to have properly followed instructions given by a trial court. *Pang*, 53 Ohio St.3d at 195, 559 N.E.2d 1313.

{¶ 48} Upon thoroughly reviewing the evidence presented at trial (including the opening statements and closing arguments), the transcript of which comprised nearly 1,000 pages, we find that the statements made by counsel for Jewish Home regarding the $5,000 deductible, appellant's phone call to the Ohio Department of Health, and the nursing-home entry briefly depicting appellant in

unflattering terms were not so egregious that the trial court was required to order a new trial. The trial court, therefore, did not err by failing to grant a new trial pursuant to Civ.R. 59(A)(2). Appellant's fourth assignment of error is overruled.

{¶ 49} Assignment of Error No. 3:

{¶ 50} "The trial court erred in permitting defense expert witness to give testimony beyond those disclosed in his expert report."

{¶ 51} Assignment of Error No. 7:

{¶ 52} "The trial court erred in permitting expert testimony as to 'possible' causes."

{¶ 53} Steven Payne, M.D., a primary-care internist, was an expert witness for Dr. Kotzin at trial. Prior to trial, Dr. Kotzin submitted Dr. Payne's report, which stated:

{¶ 54} "Based upon my review of the above case materials and upon my training and experience as a board-certified internist, it is my opinion that Dr. Scott Kotzin was at all times within the standard of care for an internal medicine physician in his care and treatment of Barry Silver during Mr. Silver's stay at Cedar Village nursing facility, including Dr. Kotzin's discharge of Mr. Silver on 9/9/05. All of my opinions are to a reasonable degree of medical certainty. I reserve the right to amend this report upon future receipt of additional information."

{¶ 55} The materials reviewed by Dr. Payne included appellant's records at the nursing home between August 19 and September 9, 2005; the records of Care Connection of Cincinnati between September 10 and October 21, 2005 (Care Connection, a home-services organization, provides nursing and therapy at patients' homes; it provided physical therapy to appellant; occupational therapy was postponed several times at appellant's request); appellant's medical records at University Hospital where he was hospitalized following his October 2005 fall; the depositions of appellant and Dr. Kotzin; and phone records of United.

{¶ 56} At trial, Dr. Payne testified that appellant was not prematurely discharged, that Dr. Kotzin did not fall below the standard of care when he discharged appellant on September 9, 2005, and that appellant's October fall was not related in any way to his discharge 43 days earlier. Dr. Payne also testified that (1) before he was admitted at the nursing home, appellant had chronic kidney disease/chronic renal failure and was in fact seen by a nephrologist while at Jewish Hospital for his fractured ankle, (2) appellant's creatinine and blood urea nitrogen (BUN)[4] levels were elevated before his ankle fracture, still

---

4. Dr. Payne testified that urea nitrogen is waste product that is typically eliminated by the kidneys. A high BUN level indicates that the urea nitrogen is not being eliminated by the

abnormal but better while at the nursing home, and extremely elevated on September 30, 2005, (3) the latter levels were putting appellant in a state of "advanced renal failure," (4) on the day of his fall in October 2005, appellant's creatinine and BUN levels were "seven times normal," indicating acute renal failure, (5) based on appellant's creatinine and BUN levels while in the nursing home, Dr. Kotzin had no reason to suspect that the levels were going to dramatically increase after appellant's discharge, and (6) dehydration, acute infection, and/or use of diuretics can all cause acute renal failure.

{¶ 57} Appellant objected to Dr. Payne's testimony regarding appellant's creatinine and BUN levels on the ground it went beyond Dr. Payne's opinion in his report; further, the testimony discussed causation, which was not addressed in the report. The objection was overruled. Appellant also objected to Dr. Payne's testimony regarding the possible causes of acute renal failure on the ground that the testimony was stated in terms of possibilities, not probabilities. The objection was overruled.

{¶ 58} In his third assignment of error, appellant argues that the trial court abused its discretion when it allowed Dr. Payne to testify beyond the scope of his report. Appellant asserts that because Dr. Payne's report was not supplemented before trial as required under Civ.R. 26(E)(1)(b), he was "shocked" when at trial Dr. Payne offered opinions regarding acute renal failure and appellant's creatinine and BUN levels both before his admission to and after his discharge from the nursing home. Further, because Dr. Payne's report did not address causation, appellant asserts that he was unable to effectively cross-examine him at trial.

{¶ 59} It is well established that the admission or exclusion of evidence is within the sound discretion of the trial court and that unless the trial court clearly abused its discretion and a party was materially prejudiced as a result, reviewing courts should be slow to interfere. See *State v. Withers* (1975), 44 Ohio St.2d 53, 73 O.O.2d 280, 337 N.E.2d 780.

{¶ 60} Civ.R. 26(E)(1)(b) requires a party to seasonably supplement responses to any questions directly addressed to the subject matter on which an expert is expected to testify. "This duty * * * is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced." *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 370, 28 OBR 429, 504 N.E.2d 44. The purpose of Civ.R. 26(E)(1)(b) is to prevent "trial by ambush." Id. at 371, 28 OBR 429, 504 N.E.2d 44.

---

kidneys; it is one of the symptoms of kidney disease. Likewise, creatinine is a byproduct of metabolism and a marker for kidney function. A high level of creatinine indicates that the kidneys are not eliminating most of the creatinine and are thus not working properly.

{¶ 61} A trial court may exclude expert testimony as a sanction for violating Civ.R. 26(E)(1)(b). Id. Trial courts possess broad discretion when determining the appropriate sanction for a Civ.R. 26(E) violation. *Wright v. Suzuki Motor Corp.*, Meigs App. Nos. 03CA2, 03CA3, and 03CA4, 2005-Ohio-3494, 2005 WL 1594850, ¶ 64.

{¶ 62} Dr. Payne's report, dated July 9, 2008, was attached to Dr. Kotzin's pretrial statement filed on May 11, 2009. Prashanth Kesav, M.D., a general internist, was appellant's expert witness. His deposition was taken and video-taped on May 20, 2009, and subsequently filed. The deposition was played to the jury as part of appellant's case. At trial, Dr. Payne's testimony came after Dr. Kesav's deposition testimony.

{¶ 63} Dr. Kesav testified that Dr. Kotzin had prematurely discharged appellant and that appellant was a fall risk when he was discharged on September 9, 2005. Dr. Kesav also testified that after appellant fell in October 2005 and was on the ground for several hours, he was taken to University Hospital where he "was found to be in rhabdomyolysis and acute renal failure." Dr. Kesav testified that the complications suffered by appellant at University Hospital, including acute renal failure and dehydration, were a result of his fall. Dr. Kesav further testified that as a result of Dr. Kotzin's failure to meet the standard of care, appellant suffered acute renal failure and dehydration.

{¶ 64} Dr. Kesav explained rhabdomyolysis as follows: "[appellant] had fallen and wasn't able to get back up and then gradually over a period of time over a period of * * * couple of hours he got dehydrated and muscle breakdown took over. That's * * * what we call rhabdomyolysis because the muscle proteins when they breakdown because of * * * a fall and being down for several hours they go and clog the renal tubules which causes acute renal failure and dehydration secondarily." Dr. Kesav explained that when someone has chronic kidney disease, such as appellant, an event like rhabdomyolysis can "tip the renal status over and cause acute renal failure."

{¶ 65} The records reviewed by Dr. Kesav did not include some of the records reviewed by Dr. Payne. Dr. Kesav testified that he did not know how appellant was progressing between his discharge from the nursing home and his October fall. Likewise, he did not know whether appellant had episodes of acute renal failure before his October fall or what appellant's creatinine and BUN levels were before the October fall. Dr. Kesav agreed that if appellant's family physician believed appellant had acute renal failure a week before his admission at the nursing home, this would be important information as to whether appellant's acute renal failure in October 2005 was related to his October fall. Dr. Kesav further testified that a significant increase in appellant's creatinine and BUN levels in one month could be considered acute renal failure.

{¶ 66} We are not convinced that the trial court erred when it allowed Dr. Payne to testify about causation, appellant's various creatinine and BUN levels, and/or his acute renal failure in 2005. Nor do we find an element of "ambush" in the present case. While Dr. Payne's report did not address causation, appellant's creatinine and BUN levels, and/or his acute renal failure, Dr. Payne's testimony at trial was in large part in response to Dr. Kesav's deposition testimony played earlier to the jury. In light of his own expert's testimony regarding appellant's acute renal failure following his October fall and the relation between appellant's discharge and his October fall, appellant should have expected that Dr. Payne would be asked and testify about these issues. Dr. Payne's testimony simply rebutted Dr. Kesav's testimony. Dr. Payne's testimony at trial did not create the type of unfair surprise that Civ.R. 26(E)(1)(b) is intended to prevent.

{¶ 67} Further, appellant chose to provide only some records to Dr. Kesav for him to review for his expert opinion and chose not to depose Dr. Payne. "Pretrial reports are not intended as a substitute for the taking of depositions." *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 153, 569 N.E.2d 875. Appellant cannot complain about his "surprise" at Dr. Payne's trial testimony when he did not depose Dr. Payne.

{¶ 68} However, even assuming, arguendo, that the trial court erred in allowing Dr. Payne to testify beyond the scope of his report, we find any error harmless. It is well established that to recover in a negligence action, a plaintiff must prove (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury resulting proximately therefrom. See *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018. By appellant's own admission, Dr. Payne's trial testimony concerned the issue of causation. However, the jury specifically found that Dr. Kotzin was not negligent. It therefore never addressed the issue of causation. Thus, allowing Dr. Payne's foregoing trial testimony would have been harmless error. See Civ.R. 61.

{¶ 69} Appellant's third assignment of error is overruled.

{¶ 70} In his seventh assignment of error, appellant argues that the trial court erred when it allowed Dr. Payne to testify about " 'possible' causes" in violation of the Ohio Supreme Court's decision in *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532. The record shows that during direct examination, counsel for Dr. Kotzin asked Dr. Payne whether a person with creatinine and BUN levels similar to appellant's "cause[s] a physician to consider certain possible diagnoses." Over appellant's objection, Dr. Payne testified that "different things can cause this degree of renal failure. Dehydration can certainly contribute to it. Use of diuretics can contribute to it, acute infection could

contribute to it, a person gets sick from an infection of some type that can push the kidney function to the worse level."

{¶ 71} In *Stinson*, the Ohio Supreme Court held that an expert testifying as to causation, including alternative causes, must testify in terms of probability. *Stinson*, 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus. "An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue." Id. An expert's opinion is competent only if the expert is able to express that there is a greater than 50 percent likelihood that a causative event produced the occurrence at issue in the case. Id.; *Lee v. Barber* (July 2, 2001), Butler App. No. CA2000–02–014, 2001 WL 733449. Expert opinions expressed with a lesser degree of certainty must be excluded as speculative or conjectural. *Steinmetz v. Latva*, Erie App. No. E–02–025, 2003-Ohio-3455, 2003 WL 21500185, ¶ 21.

{¶ 72} In *Stinson*, the plaintiff sued her obstetrician after her baby, who was born after the expected delivery date, was diagnosed as suffering severe mental impairment. At trial, the doctor called an expert witness who testified that any of three events could have caused the baby's injuries, but that one of the events was the "most likely" cause. Id. at 454, 633 N.E.2d 532. The plaintiff argued that the testimony was incompetent because the opinion was stated in terms of possibilities, not probabilities. Id. The Supreme Court ultimately found that the trial court did not abuse its discretion by allowing this testimony. Id. at 457, 633 N.E.2d 532.

{¶ 73} In reaching its decision, the Supreme Court distinguished between two types of defenses: (1) a defense in which the defendant offers an alternative explanation for the events giving rise to the litigation and (2) a defense in which the defendant controverts a fact propounded by the other side. *Stinson*, 69 Ohio St.3d at 455–456, 633 N.E.2d 532. In the former situation, expert opinion regarding a causative event must be stated in terms of probability regardless of whether the side offering the opinion bears the burden of proof on the ultimate issue. Id. In the latter situation, an expert opinion may be properly admissible even if it is not stated in terms of probability. By testifying that another cause is more likely than the cause suggested by the plaintiff, the defense's expert is essentially stating that the cause suggested by the plaintiff is not probable. Such an opinion is competent opinion. Id. at 457, 633 N.E.2d 532.

{¶ 74} Dr. Kesav testified that by triggering rhabdomyolysis, appellant's fall caused the acute renal failure with which he was diagnosed at University Hospital. Dr. Payne testified that appellant's acute renal failure following his fall was not the first time appellant had suffered acute renal failure. Dr. Payne also testified that several "things" can cause acute renal failure, such as dehydration, use of diuretics, and/or acute infection. The record shows that appellant was

dehydrated upon hospitalization at University Hospital; appellant was taking diuretics, and had been doing so for several months, to control chronic swelling in his legs; and following his discharge from the nursing home but before his fall, appellant told his surgeon that he was worried about a possible infection in his ankle in the area of the incision.

{¶ 75} Whether Dr. Payne's foregoing testimony qualifies as an alternative explanation for appellant's acute renal failure following his fall, or an opinion that Dr. Kesav's theory as to the cause of appellant's acute renal failure was not probable, we find that any error in allowing Dr. Payne to testify as he did was harmless error. See Civ.R. 61. As stated earlier, the jury specifically found that Dr. Kotzin was not negligent and therefore never reached the issue of causation. Thus, any error in allowing Dr. Kotzin to testify about "possible diagnoses" regarding appellant's acute renal failure following his fall had no prejudicial effect and was harmless error. See *Jackson v. Sunforest OB–GYN Assoc., Inc.*, Lucas App. No. L–06–1354, 2008-Ohio-480, 2008 WL 344134.

{¶ 76} Appellant's seventh assignment of error is overruled.

{¶ 77} Assignment of Error No. 5:

{¶ 78} "The trial court erred by refusing to properly charge the jury."

{¶ 79} Under this assignment of error, appellant argues that the trial court gave an improper jury instruction. In addition, he argues that the trial court erred in refusing to give a jury instruction as to "aggravation."

{¶ 80} "A trial court has the duty to instruct the jury as to the applicable law on all issues presented in the case that are supported by the evidence. It is within the sound discretion of the trial court to determine whether a jury instruction is relevant." (Citations omitted.) *Enderle v. Zettler*, Butler App. No. CA2005–11–484, 2006-Ohio-4326, 2006 WL 2390515, ¶ 35.

{¶ 81} When considering the appropriateness of a jury instruction, or when a specific jury instruction is in dispute, a reviewing court must examine the instructions as a whole. Id. at ¶ 36; *Coyne*, 2007-Ohio-6170, 2007 WL 4099431 at ¶ 25. "If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 410, 629 N.E.2d 500, citing *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537. "Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." *Wozniak* at 410, 629 N.E.2d 500.

{¶ 82} Appellant first argues that the trial court erred by instructing the jury as follows: "If you find that plaintiff failed to prove that any defendant was negligent, or if you find that plaintiff failed to prove that their negligence proximately caused injury to the plaintiff or if plaintiff's negligence was more than 50% or *if you are unable to determine how the accident happened, then your verdict must be for both defendants.*" (Emphasis added.) Appellant asserts that the instruction was improper because there was no "accident"; further, it imposed an improper higher burden of proof on appellant.

{¶ 83} We find no reversible error in the trial court's single use of the word "accident" in its jury instructions. Appellant's claim against Dr. Kotzin and the nursing home was one of negligence, and negligence means an accident. In fact, one of appellant's "additional requested jury instructions" specifically included the word "accident." Appellant cannot complain about the trial court's use of the term when appellant's own jury instructions as to negligence used the same term.

{¶ 84} Nor do we find a reversible error in the trial court's allegedly improper jury instruction. Appellant does not explain how the jury instruction imposes a higher burden of proof of certainty rather than probability. Nor does he cite any case law in support of his argument. Upon reviewing the jury instructions in their entirety, we find that the instructions fairly and correctly state the applicable law concerning appellant's burden of proof in this negligence case. See *Cupp v. Naughten* (1973), 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (a single jury instruction may not be judged in artificial isolation but must be viewed in the context of the overall charge).

{¶ 85} Appellant also argues that the trial court erred by refusing to instruct the jury as to the term "aggravation." Appellant asserts that in light of Dr. Kesav's testimony that appellant's October fall and being on the ground for several hours exacerbated his chronic renal failure into acute renal failure, the trial court erred in refusing to instruct the jury as to aggravation of appellant's prior medical condition. Appellant's argument is based on the following testimony:

{¶ 86} "Q. [by appellant's counsel]: Based upon Mr. Silver's medical records and his * * * premorbid condition do you have an opinion within a reasonable degree of medical probability as to whether Mr. Silver sustained any injuries, medical conditions or aggravation of preexisting medical conditions as a direct and proximate result of Dr. Kotzin's failure to render the appropriate standard of care in this case?

{¶ 87} "A. [by Dr. Kesav]: Yes.

{¶ 88} "Q. Okay. And what do you think those injuries or damages or exacerbations or aggravations were?

{¶ 89} "A.  Dehydration, acute renal failure, congestive heart failure as a result of acute renal failure."

{¶ 90} An appellate court will reverse a trial court's refusal to give a proposed jury instruction only if (1) the trial court abused its discretion by failing to give the requested instruction and (2) the complaining party was prejudiced as a result.  *Enderle*, 2006-Ohio-4326, 2006 WL 2390515, at ¶ 37.  A trial court is not required to give a proposed jury instruction merely because counsel submitted it.  *Rogan v. Brown*, Clinton App. No. CA2005–10–025, 2006-Ohio-5508, 2006 WL 3003971, ¶ 30.

{¶ 91} We find that the trial court did not err in refusing to instruct the jury as to aggravation.  First, based on Dr. Kesav's answer, one cannot say whether acute renal failure, dehydration, and/or congestive heart failure, conditions appellant suffered after his October fall, were either new injuries, new medical conditions, or as appellant asserts, aggravation of pre-fall preexisting injuries.  Given the poorly worded, compound question, Dr. Kesav's answer is ambiguous.  Further, while counsel for Jewish Home referred to appellant's prior medical conditions (congestive heart failure and chronic renal failure) in defense of specific exhibits, counsel for both Dr. Kotzin and Jewish Home never conceded that aggravation of a pre-existing condition was part of the case.  In fact, testimony at trial revealed that prior to his October fall and prior to his admission at the nursing home, appellant had suffered acute renal failure, a fact unknown to Dr. Kesav.

{¶ 92} Finally, whether appellant's post-fall injuries were an aggravation of pre-existing injuries went to the issue of causation.  However, as noted several times, because the jury specifically found that neither Dr. Kotzin nor the nursing home was negligent, it never reached the issue of causation.

{¶ 93} Appellant's fifth assignment of error is overruled.

{¶ 94} Assignment of Error No. 6:

{¶ 95} "The trial court erred to the prejudice of appellant by admitting *en masse* plaintiff's medical records without proper foundation."

{¶ 96} Appellant challenges the admission into evidence of Exhibit A, submitted by the nursing home, and Exhibit C, submitted by Dr. Kotzin.  Exhibit A is appellant's medical records with his cardiologist; Exhibit C is appellant's medical records with his family physician.  On appeal, appellant argues that the admission en masse of both exhibits was prejudicial to appellant in that "[t]he psychological effect is clearly to give the jury the impression that this person has too many medical problems and it is easier just to write this person off."  Further, "[t]o allow jury members to page through hundreds of pages of medical records, much of which is illegible and contains many abbreviations which lay

jurors are unfamiliar with, is just inviting speculation and erroneous conclusions." Appellant also argues that the "wholesale admission" of the exhibits violated Evid.R. 803(4) and cites this court's decision in *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 20 OBR 44, 484 N.E.2d 712, in support.

{¶ 97} As stated earlier, the admission or exclusion of evidence is within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 483 N.E.2d 1157.

{¶ 98} The authenticity of the medical records in Exhibits A and C was not disputed at trial. We note that while appellant objected at trial to the admission of the two exhibits, he did not object on the basis of Evid.R. 803(4) and/or *McQueen*. Evid.R. 103(A)(1) requires that a party timely object and state the specific ground of objection. Absent a timely and specific objection, error may not be predicated on the admission of the improper evidence. See id. Because appellant did not specifically object on the basis of Evid.R. 803(4) and/or *McQueen*, he has waived the issue on appeal.

{¶ 99} We cannot say that the trial court's admission of Exhibits A and C into evidence was so arbitrary, unreasonable, or unconscionable that it amounts to an abuse of discretion. However, even assuming, arguendo, that the trial court erred in admitting the two exhibits, we find any error harmless. See Civ.R. 61. An error does not justify reversal of an otherwise valid adjudication where the error does not affect substantial rights of the complaining party or the court's action is not inconsistent with substantial justice. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 165, 17 O.O.3d 98, 407 N.E.2d 490. Erroneous admission of evidence is not reversible where, had the errors not occurred, the jury would probably have made the same decision. Id.

{¶ 100} Exhibit A, appellant's medical records with his cardiologist, and Exhibit C, appellant's medical records with his family physician, both related to appellant's various medical conditions, including acute renal failure. Dr. Kesav, appellant's expert witness, testified that the acute renal failure and congestive heart failure suffered by appellant after his October fall were either related to or caused by the fall. However, the jury specifically found that neither Dr. Kotzin nor the nursing home was negligent; it therefore never reached the issue of causation. We therefore find no reversible error in the admission of the two exhibits.

{¶ 101} In light of the foregoing, appellant's sixth assignment of error is overruled.

Judgment affirmed.

POWELL and BRESSLER, JJ., concur.