[Cite as *Snyder v. Lawrence*, 2020-Ohio-3358.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

THOMAS SNYDER ET AL.,

Plaintiffs-Appellants,

v.

CAROLYN LAWRENCE ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 CA 0938**

---

Civil Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2018 CV 29036

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Chad Murdock,* 228 West Main Street, P.O. Box 248, Ravenna, Ohio 44266, for Plaintiff-Appellant Village of Malvern and

*Atty. John McCall, Jr.,* and *Atty. John Wirtz,* 4150 Belden Village Street NW, Suite 606, Canton, Ohio 44718, for Defendants-Appellees Russel and Lois Reed.

Dated: June 15, 2020

_____

**D'APOLITO, J.**

{¶1} Appellant, Village of Malvern ("Appellant" or "Village") appeals the entry of summary judgment by the Carroll County Court of Common Pleas in favor of Appellees, Russell W. Reed and Lois J. Reed in this action to collect an amount due on a water bill. Appellant contends that there exists an implied-in-fact contract and/or an implied-in-law contract between the parties to this appeal for water provided to a manufactured home park ("park") outside the territorial boundaries of the Village. Appellees, who collected rents from the tenants of the park for a year and a half pursuant to an assignment of rents agreement with the park owner, assert that Appellant raises its implied contract claims for the first time on appeal. Appellees argue, in the alternative, that no implied contract can be established based on the record. For the following reasons, the judgment entry of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶2} On November 22, 2004, Appellees provided a loan in the amount of $300,000.00 to Defendant, Carolyn M. Lawrence and Richard E. Lawrence for the purchase of the park. As security for the loan, the Lawrences executed a promissory note, a mortgage on the park, and an assignment of rents, in favor of Appellees. The assignment of rents provided that Appellees, as lenders, were entitled to collect the rents on the park. The Assignment of Rents reads, in pertinent part:

**RIGHTS AND REMEDIES ON DEFAULT:**

Upon the occurrence of any event of Default and at any time thereafter, Lender may exercise any one of the following rights and remedies, in addition to any other rights or remedies provided by law:

* * *

Case No. 19 CA 0938

> **Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.

(11/22/2004 Assignment of Rents, p. 3).

**{¶3}** At some point, Carolyn M. Lawrence entered into a written contract with the Village to provide water to the park, which is outside of the territorial boundaries of the Village. The contract is not in the record. On October 1, 2007, the Lawrences recorded a quit claim deed, which transferred ownership of the park to the Carolyn M. Lawrence Revocable Trust ("Trust"). Neither Lawrence nor the Trust is a party to this appeal.

**{¶4}** On April 20, 2016, Appellees' counsel sent correspondence to the park's tenants explaining that Russell Reed held the promissory note and mortgage on the park. The letter further explained that the Lawrences had defaulted on the note and that Russell Reed "**now has the legal right to collect all the monthly rents directly from you the tenant,** and all the tenants in the park." (Emphasis in original)(4/20/16 Letter, attached to Verified Complt. as Exhibit 3.) The April 20, 2016 letter further explains that "[a]t the same time the mortgage was filed, an Assignment of Rents was also filed with the Carroll County Recorder. This document allows the Lender (Mr. Reed) to collect all of the rents from the Park, instead of Mrs. Lawrence." The letter further informs the tenants that Russell Reed had employed a realtor, who would be contacting the tenants to provide contact information and answer any questions regarding the letter.

**{¶5}** Appellant offered the affidavit of Terri Foster, the water department billing clerk. She attests that Ken Offenberger, Jr., the mobile home park manager, hand-delivered a follow-up letter from Reed's attorney to the tenants dated April 28, 2016 to the water department. The letter explains that Lawrence has conceded that she defaulted on her loan payments, and that Russell Reed has the legal right to collect monthly rents from mobile home park residents. The letter further explains that Lawrence entered into a sale agreement with Russell Reed's realtor to market and sell the park. Finally, the letter instructs the tenants of the park to pay all future rents to Reed, in care of the realtor. The letter, which was attached to Foster's affidavit, was delivered to the water department on

May 16, 2016, and contains the handwritten names and telephone numbers of Offenberger and Russell Reed.

{¶6} On December 7, 2017, Russell Reed himself sent a letter to the tenants of the park. According to the letter, a new water meter had been installed by the Village and recorded water usage of ten times the projected amount. The water bill in October was $5,700.00 (1,380,000 gallons) and $5,300.00 (1,333,500 gallons) in November. The letter reads, in pertinent part, "[t]he cost for approx. 28 trailers should be less than $900.00 per month." Reed's letter further explains that a track-hoe was rented and no leaks were found in the park. However, the workmen "then looked into the sewer manholes and found large amounts of water running indicating leaks in the mobile homes."

{¶7} The letter instructs the tenants to "let Kenny check every home for leaks and give advice how to replace or repair unit [sic]." The letter warns, "I[f] the leaks are not repaired immediately and usage return to 100,000-120,000 [gallons] per month I can only assume the [V]illage will eventually shut the water off and all will be forced to move." The letter concludes with the admonition that "[i]f the consumption of water is not brought under control we will not be able to pay the water bills." (12/7/17 Letter, attached to Verified Complt. as Exhibit 5.)

{¶8} A notice to Russell and Lois Reed from the water department dated January 4, 2018 demands payment in the past due amount of $15,524.39 by January 23, 2018. The notice threatens disconnection of water service if no payment is made. (12/7/17 Letter, attached to Verified Complt. as Exhibit 6.) A copy of a water bill with Appellees as account holders, dated February 20, 2018 is attached to Foster's affidavit and reflects a balance due of $22,430.06. Foster's affidavit reads, in pertinent part, "that amount reflects the water usage, not paid, while the Reeds collected rent at the park." (*Id.,* ¶ 4.)

{¶9} Appellees attached to their cross-motion for summary judgment the affidavit of Russell W. Reed. Reed avers that the Reeds entered into a loan agreement with the Lawrences on November 22, 2004. Reed further avers that "[a]s a result of the default [on the loan], Affiant began collecting rental payments pursuant to the Assignment of Rents contract." (Reed Aff., ¶6.) Reed warrants that Appellees were never the titled owners of the property, which was at all time relevant to Appellant's claim, owned by Lawrence or the Trust.

Case No. 19 CA 0938

{¶10} Appellees argue in their briefs that they stopped paying the water bill because the tenants stopped paying the rent, however, there is no evidence – either documentary or testimonial – that some or all of the tenants stopped paying some or all of their rent. Evidently, Appellees testified at the preliminary hearing that they stopped paying the water bill because the tenants stopped paying their rent. There is no hearing transcript in the record, and there is no evidence of the amount of rent collected or the amount of the water bills for each month that the water bills went unpaid. Nonetheless, the Village concedes in its appellate brief that the tenants stopped paying rent, but argue that the rent stoppage did not excuse Appellees from their obligation to pay the water bill.

{¶11} In the verified complaint, filed on January 19, 2018 in municipal court, Plaintiffs alleged that Lawrence and/or the Trust owned the park and Appellees operated the park under the assignment of rents. Plaintiffs allege that Lawrence and/or the Trust and the Reeds were violating their rights under R.C. Chapter 4781, which governs manufactured home parks, and R.C. Chapter 5321, the Landlord-Tenant Act. Plaintiffs also named the Village, which provided water to the park pursuant to a written contract with Lawrence. Plaintiffs sought an injunction to prohibit the termination of water service to the park, as well as to correct other violations, and for the appointment of a receiver to operate the park.

{¶12} R.C. 4781.01(M) defines "Manufactured home park operator" or "park operator" as "the person who has responsible charge of a manufactured home park and who is licensed under sections 4781.26 to 4781.35 of the Revised Code." R.C. 5321.01(B) defines "Landlord" as "the owner, lessor, or sublessor of residential premises, the agent of the owner, lessor, or sublessor, or any person authorized by the owner, lessor, or sublessor to manage the premises or to receive rent from a tenant under a rental agreement."

{¶13} The municipal court issued a temporary restraining order and scheduled a hearing on the motion for preliminary injunction on January 29, 2018. Following the hearing, the municipal court issued an order on February 1, 2018, which prohibited the Trust, Lawrence and Appellees from "violating Plaintiffs' rights under R.C. 4781.38(A)(1), (2), and (4) and R.C. 5321.04(A)(2), (4), and (6)" and ordered to take "all reasonable steps necessary to keep water service at the [park.]" The municipal court also prohibited the

Village from terminating water service to the park without a further order from the trial court.

**{¶14}** The Village answered the complaint and filed crossclaims against both Lawrence and Appellees for $22,430.06 in unpaid water bills. In its crossclaim, Appellant alleged that "[a]bout April 2016, [Appellees] entered into a contract with the Village water department for the Village to supply water to the subject property as co-obligors on the same account as [Lawrence.]" (Cross Complt., ¶3.)

**{¶15}** No answers were filed to the crossclaim, so Appellant moved for default judgment against Lawrence, the Trust, and Appellees. In the alternative, Appellant moved for summary judgment against Appellees, in the event that the trial court granted them leave to answer the crossclaim. On April 2, 2018, the municipal court granted a joint motion to transfer the matter to the court of common pleas.

**{¶16}** In its motion for summary judgment, Appellant argued that Appellee took "responsible charge" of the park in May of 2016 (parroting the statutory language from R.C. 4781.01(M)), when they started collecting the rents and paying the water bill. Appellant wrote, "As Russell Reed implied at the hearing, if he had collected all the rent, he would have paid the bill. However, [Appellees'] inability to collect the rent does not excuse [Appellees] from their contract with [the Village] or their obligation to maintain the water supply on the account." (Mot. at p. 4.) Appellant argued that Appellees liability arose from their role as "operators" of the park, and that Appellees had an obligation created by statute to provide water to the tenants at the park.

**{¶17}** Appellees argued that the assignment of rents gave them only a personal property interest in the rents. They further argued that any statutory duty to provide water to the tenants at the park was borne exclusively by Lawrence as the owner of the park.

**{¶18}** On October 28, 2019, the trial court entered summary judgment in favor of Appellees finding that "[t]he Village never contracted with [Appellees] and never did [Appellees] agree to be responsible for the water bill." (10/28/19 J.E., p. 2.) The trial court further opined that "[t]he fact that [Appellees] voluntarily paid the water bill when the tenants were paying rent is not determinative of a legal obligation to assume the water bill." (*Id.*) Because Appellants' express contract for water service was with Lawrence, and landlord-tenant law created rights and obligations to tenants concerning the utilities, the

trial court found that Appellees were not responsible for the payment of the water bill. The trial court concluded that Appellees were secured creditors who were entitled to collect rents, while the Village was an unsecured creditor of the Lawrence Trust.

**{¶19}** On November 9, 2019, default judgment was entered in favor of Appellant and against Lawrence and the Trust. No amount was specified in the entry. In the meantime, a receiver was appointed who operated then sold the park to a third party, which resolved all issues raised by Plaintiffs against the parties to this appeal. This timely appeal followed.

## STANDARD OF REVIEW

**{¶20}** This appeal is from a trial court judgment resolving a motion for summary judgment. An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 8th Dist.1995). Whether a fact is "material" depends on the substantive law of the claim being litigated.

**{¶21}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder

could rule in that party's favor. *Doe v. Skaggs,* 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 11.

## LAW

**{¶22}** Municipally-owned public utilities have no duty to sell their products, including water, to extraterritorial purchasers absent a contractual obligation. *Fairway Manor, Inc. v. Bd. of Commrs. of Summit Cty.*, 36 Ohio St.3d 85, 521 N.E.2d 818, (1988). There are three basic types of contracts: express, implied in fact, and implied in law. *Christopher v. Automotive Fin. Corp.*, 7th Dist. Mahoning No. 06 MA 186, 2008-Ohio-2972, ¶ 33, citing *Legros v. Tarr*, 44 Ohio St.3d 1, 6, 540 N.E.2d 257 (1989). In an express contract, the parties have actually assented to the terms of the contract in an offer and acceptance. *Id.* Appellant does not challenge the trial court's conclusion that no express contract existed between the parties to this appeal.

**{¶23}** A contract is implied in fact if the meeting of the minds is shown by the surrounding circumstances, which make it inferable that the contract exists as a matter of tacit understanding. *Christopher, supra,* at ¶ 33, citing *Legros* at 6-7. To establish a contract implied in fact, "a plaintiff must demonstrate that the circumstances surrounding the parties' transaction make it reasonably certain that an agreement was intended." *Wajda v. M&J Automotive, Inc.*, 7th Dist. Mahoning No. 10-MA-7, 2010-Ohio-6584, ¶ 44.

**{¶24}** In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain. Contracts implied in law are not true contracts; the relationship is not in a strict sense contractual but quasi-contractual or constructively contractual. *Christopher, supra,* at ¶ 33, citing *Legros* at 7.

**{¶25}** Equity, not intent, governs the application of the legal fiction. *Id.* at ¶9, citing *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged* (1984), 15 Ohio St.3d 44, 46, 472 N.E.2d 704 (1984). The entire point of the doctrine is to turn a moral obligation into a legal obligation where a known benefit is conferred upon a party and where the retention of that benefit without compensation to the party who benefits would be unjust. *Id.,* citing *Hummel v. Hummel*, 133 Ohio St. 520, 526, 14 N.E.2d 923 (1938).

**{¶26}** In order to establish a breach of contract claim, a plaintiff must demonstrate by a preponderance of the evidence that: (1) a contract existed, (2) the plaintiff fulfilled its obligations, (3) the defendants failed to fulfill their obligations, and (4) damages resulted from this failure. *Fed. Natl. Mtge. Assn. v. Brown*, 7th Dist. Columbiana No. 16 CO 0008, 2017-Ohio-9237, ¶ 26. A preponderance of the evidence "is evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not * * * or evidence which is more credible and convincing to the mind." *Alazaus v. Haun*, 7th Dist. Carroll No. 740, 2001-Ohio-3230. quoting Black's Law Dictionary (6th Ed. Abr.1991) 819.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT FAILED TO CONSIDER THAT THE REEDS, BY THEIR CONDUCT, ESTABLISHED AN IMPLIED IN FACT (OR IMPLIED IN LAW) CONTRACT WITH THE VILLAGE TO PROVIDE WATER TO THE PARK AND BREACHED THE CONTRACT BY NOT FULLY PAYING FOR THE WATER USED BY THE PARK. T.D. 166.**

**{¶27}** It is axiomatic that a plaintiff cannot change the theory of his case and present new arguments for the first time on appeal. *Kalish v. Trans World Airlines, Inc.*, 50 Ohio St.2d 73, 362 N.E.2d 994 (1977) (holding that a party who proceeds under a state cause of action may not for the first time on appeal advance a federal cause of action that was not considered by the courts below); *State ex rel Guiterrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992) (stating that "[a]ppellant cannot change the theory of his case and present these new arguments for the first time on appeal"). Appellees contend that we should not consider Appellant's implied contract arguments because they are raised for the first time on appeal.

**{¶28}** Appellant counters that it did not include the relevant law on implied contracts in its motion for summary judgment because it did not know "the trial court would take such a narrow view of contract law." (Rep., p. 1.) Appellant further argues the rule of waiver in civil cases is not absolute. "When an issue of law that was not argued below

is implicit in another issue that was argued and is presented by an appeal, [the appellate court] may consider and resolve that implicit issue." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993), modified in part on other grounds, *Dombroski v. WellPoint, Inc.,* 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, syllabus. *Belvedere* continues, "[s]tated another way, "if [the appellate court] must resolve a legal issue that was not raised below in order to reach a legal issue that was raised, [the appellate court] will do so." *Id.*

**{¶29}** In the motion for summary judgment, Appellant argued that Appellees had a statutory duty to pay the water bill based on the definitions of "operator" and "landlord" in the Revised Code, and the duties assigned to operators and landlords by the Code. Appellant argued that Appellees took "responsible charge" of the park (quoting Revised Code definition of "operator") in April of 2016 and that "the inability to collect the rent does not excuse [Appellees] for their contract with [the Village] of their obligation to maintain the water supply by paying the account." (Mot. at p. 4.) As previously stated, Appellant did not cite the relevant law governing implied contracts in its motion for summary judgment.

**{¶30}** However, we will consider the implied-in-fact theory on appeal because the Village argued in its motion for summary judgment that Appellees' voluntary payment of the water bill from April 2016 to December of 2017 created a continuing obligation to the Village. The trial court considered and rejected the argument that Appellees' voluntary payments created an ongoing obligation to pay the water bill. Therefore, we find that the theory was advanced before the trial court.

**{¶31}** The same is not true for Appellant's implied-in-law argument. In the absence of any argument below regarding equity or unjust enrichment, we find that the Village waived its implied-in-law theory when it failed to assert the argument before the trial court. Further, the equitable argument is not implicit in Appellant's breach of contract claim. Accordingly, we will not consider Appellant's argument as it pertains to equity.

**{¶32}** Although the trial court did not cite a single case in the two-page judgment entry, its analysis turned on two issues. First, the trial court found that the water bill was the sole responsibility of Lawrence, who contracted with the Village for water service to the park, and Appellees voluntary payment of the water bill between May of 2016 and

December of 2017 did not create a contractual obligation with the Village. Second, the trial court recognized that Appellees were a secured creditor of Lawrence, by virtue of the assignment of rents, while the Village was an unsecured creditor.

{¶33} An implied-in-fact contract requires evidence of a tacit agreement between the parties, however, certain facts in the record demonstrate that Appellees did not assume personal responsibility for the park's water bills. First, the April 20, 2016 letter to tenants plainly states that "[a]t the same time the mortgage was filed, an Assignment of Rents was also filed with the Carroll County Recorder. This document allows the Lender (Mr. Reed) to collect all of the rents from the Park, instead of Mrs. Lawrence." Appellees clearly explain in their initial correspondence with the tenants that they are collecting the rents pursuant to an assignment of rents, not because they are assuming ownership or control of the park.

{¶34} Further, when the water consumption at the park became an issue, Russell Reed informed the tenants that the water bills would not be paid. The December 7, 2017 letter reads, in pertinent part, "I[f] the leaks are not repaired immediately and usage returned to 100,000-120,000 [gallons] per month I can only assume the [V]illage will eventually shut the water off and all will be forced to move." The letter concludes with the admonition that "[i]f the consumption of water is not brought under control we will not be able to pay the water bills."

{¶35} Appellees' correspondence with the tenants establishes their belief that they were not personally liable for the water bill. There is no evidence that Appellees agreed to be responsible for water bills that exceeded the total rent collected each month.

{¶36} Of equal import, the trial court entered a default judgment against Carolyn Lawrence and/or the Trust and in favor of Appellant, based on Carolyn's written contract with Appellant. Appellant's pursuit of the default judgment against the Lawrences belies their argument that Appellees had tacitly assumed responsibility for payment of the water bill following the Lawrences' default on the loan. While Appellant may assert competing legal theories regarding the responsible party on the account, Appellant may not collect a single debt from multiple parties.

Case No. 19 CA 0938

## CONCLUSION

**{¶37}** In summary, we find that Appellant has failed to show there was a tacit agreement on the part of Appellees to be personally responsible for the park's water bills. The initial letter plainly states that Appellees were collecting the rent pursuant to an assignment of rents, not because they were taking control over the management of the park. When water consumption at the park increased dramatically, Appellees cautioned that the water bill would not be paid. The default judgment entered against Carolyn Lawrence and/or the Trust further supports our conclusion that Appellees are not the responsible parties here.  Lastly, we decline to consider Appellant's implied-in-law argument because it was raised for the first time on appeal.  Accordingly, we find that Appellant's sole assignment of error has no merit and the judgment entry of the trial court is affirmed.

Donofrio, J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**