[Cite as *Stride Studios, Inc. v. Alsfelder*, 2023-Ohio-1502.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STRIDE STUDIOS, INC., | : | APPEAL NO. C-220395 |
| | | TRIAL NO. 21CV-16172 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| BOB ALSFELDER, | : | |
| and | : | |
| DEBBIE ALSFELDER, | : | |
| Defendants-Appellants. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: May 5, 2023

*Crisler Law Office, LLC*, and *Scott A. Crisler*, for Plaintiff-Appellee,

*Bob Alsfelder* and *Debbie Alsfelder*, pro se.

**WINKLER, Judge.**

{¶1}   Defendants-appellants Bob and Debbie Alsfelder appeal the judgment entered in favor of plaintiff-appellee, Stride Studios, Inc., in this case involving a dispute about a contract for landscaping design services.  We find no merit in the Alsfelders' two assignments of error, and we affirm the trial court's judgment.

### Factual Background

{¶2}   The record shows that Stride Studios is a landscape design firm, which also assists clients in implementing construction projects that it has designed.  On November 8, 2019, the Alsfelders met with William Ripley, who operates Stride Studios, and Jeff Payne, its head designer, for a consultation to formulate a plan for the landscaping at their residence.

{¶3}   Subsequently, Ripley sent a cover letter addressed to both Bob and Debbie and a contract for them to sign.  The letter contained a detailed description of the services to be provided, the process and timing of how that work would be done, and how fees were calculated.  The contract listed both Bob and Debbie as clients and set forth Stride Studios' hourly rates, which varied by the type of employee.  On December 29, 2019, Stride Studios received the contract, which only Bob had signed.  Ripley testified that he met with the Alsfelders a total of four times.  Both Bob and Debbie attended all those meetings and had input on all decisions and the work to be performed.

{¶4}   The design work began in January 2020.  Stride Studios completed its initial analysis of the Alsfelders' property, and then began development of a base map, which is a two-dimensional plan that included details of the house, location of property lines, rights of way, fences, and other items and structures on the property.  On February 2, 2020, Ripley met with both Bob and Debbie and gave them the initial

design drawings and concepts. According to Ripley, they discussed "the details of what they wanted to accomplish on the property."

{¶5} On February 23, 2020, Ripley contacted Bob to set up a meeting to go over the drafted documents. That meeting was set to occur on March 30, 2020. It was cancelled, and the work was delayed due to the pandemic. Ripley stated that at the end of March, he had sent the Alsfelders an initial invoice for $4,262.50, which was dated February 26, 2020. He further stated that the invoice was not paid "right away."

{¶6} At a meeting on June 10, 2020, Ripley met with both Bob and Debbie and discussed design concepts. During that meeting, Bob also stated that a check for the first invoice was forthcoming. On June 23, 2020, Stride Studios received a check from Debbie's account for $4,262.50. Debbie did not sign the check because the property was held in a trust under Debbie's name.

{¶7} Work resumed on June 25, 2020. Stride Studios produced various design plans for submission to the Alsfelders, including a concept summary and some construction documents. On July 30, 2020, Stride Studios sent a second invoice of $4,710.25 for work at the residence completed in June and July.

{¶8} On August 5, 2020, Ripley and Payne met with the Alsfelders at their residence, at which time Ripley provided the Alsfelders with construction documentation. When that meeting concluded, Bob told them he had an additional project he wanted them to do. He took them to the Mariemont swim pavilion and discussed design work for a proposed pedestrian walkway. According to Ripley, Bob indicated that he had a friend or a client that wanted to donate the money for the project. Stride Studios did some preliminary work on that project. On August 25, 2020, it sent a separate invoice for that work to the Alsfelders for $1,240.25.

{¶9} The work on the pavilion was the last work that Stride Studios did for the Alsfelders, who never paid the July 30, 2020 or the August 25, 2020 invoices.

Ripley testified that he had attempted to reach the Alsfelders to get them to pay the invoices. He said that they had never voiced any complaints about the work, and they had never told him why they would not pay the invoices.

{¶10} Bob testified that when he originally met with Ripley, Ripley had told him that the work could be done for approximately $4,000. Bob said that he was not ready financially to go through with the whole project and at that time, he "just wanted the design." He said that he and Stride Studios had never agreed on the initial concept. He communicated several complaints about the concept to Ripley and Payne. He also said that he had discussed the work at the pavilion to get an idea of how much the project would cost. He did not own the pavilion and he was just making an inquiry.

{¶11} Bob further testified that he had never seen the two outstanding invoices. When Stride Studios provided those invoices, he was shocked. He had never authorized the construction drawings because they were not ready to move forward with construction. He said, "We just wanted an idea of what could be done back there."

{¶12} According to Bob, the design for the yard was his project. Debbie was not involved. She did not sign the contract, and Bob had directed Stride Studios to send information to his email address. Debbie had only attended the introductory meeting but none of the others. He said she had driven him to the second meeting because of some medical issues he had, but she was not involved in the meeting.

{¶13} Stride Studios filed a complaint in the Small Claims Division of the Hamilton County Municipal Court, seeking damages for the unpaid invoices. It named both Bob and Debbie as defendants. The Alsfelders filed a counterclaim, in which they sought return of the $4,262.50 they had already paid Stride Studios. They stated that they had paid Stride Studios that sum and had "received nothing." The counterclaim only named Bob as the defendant/counterclaim plaintiff. The Alsfelders also filed a

motion to dismiss the complaint and to dismiss Debbie as a party since she did not sign the contract.

{¶14} A hearing was held before the magistrate. The magistrate denied the motion to dismiss Debbie as a party, finding that there was an implied-in-fact contract. The magistrate found that Stride Studios had met its burden of proof to show that the Alsfelders had "failed to fulfill their obligations of payment" as to the invoice of $4,705.25 for work done at the Alsfelders' residence. But it did not meet its burden of proof as to the invoice for work done at the Mariemont pavilion because it was "never engaged to actually do the design plan," and therefore no contract existed. The magistrate also found that the Alsfelders had failed to meet their burden of proof on their counterclaim.

{¶15} The Alsfelders filed objections to the magistrate's decision. The trial court overruled the objections, adopted the magistrate's decision, and awarded judgment to Stride Studios in the amount of $4,710.25. This appeal followed.

### *Interpretation of Contracts Generally*

{¶16} The interpretation of a written instrument is, in the first instance, a matter of law for the court. If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations. Instead, the court must give effect to the contractual language. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989); *Wal-Mart Realty v. Tri-County Commons Associates, LLC.*, 1st Dist. Hamilton No. C-160747, 2017-Ohio-9280 ¶ 9. But if the provisions of a contract are ambiguous, an issue of fact exists. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984); *Wal-Mart Realty Co.* at ¶ 9.

{¶17} In the construction of a written instrument, a court's primary objective is to ascertain and give effect to the parties' intent, which can be found in the language they chose to employ. The court will give common words and phrases their ordinary meanings unless the totality of the contract reveals a contrary intent. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997); *Wal-Mart Realty Co.* at ¶ 10. The court will read the writing as a whole and gather the intent of each from a consideration of the whole. *Foster Wheeler* at 361; *Wal-Mart Realty Co.* at ¶ 10.

### Parties to the Contract

{¶18} In their first assignment of error, the Alsfelders contend that the trial court erred in holding Debbie responsible under the theory of implied contract. They argue that because Debbie did not sign the contract, she could not be held liable for the unpaid invoices under the express terms of the contract. This assignment of error is not well taken.

{¶19} Whether a contract exists is a question of law, which we review de novo. *R&A Lawn Care, LLC v. Back*, 1st Dist. Hamilton No. C-160682, 2017-Ohio-4404, ¶ 15; *Benefits Evolution v. Atlantic Tool and Die*, 9th Dist. Summit No. 25405, 2011-Ohio-4062, ¶ 25. An express contract exists when the parties have assented to the terms of the contract in an offer and acceptance. *Snyder v. Lawrence*, 7th Dist. Carroll No. 19 CA 0938, 2020-Ohio-3358, ¶ 22; *N. Side Bank & Trust Co. v. Trinity Aviation, LLC*, 1st Dist. Hamilton Nos. C-190021 and C-190023, 2020-Ohio-1470, ¶ 14. A contract is implied in fact if the surrounding circumstances show a meeting of the minds. *Snyder* at ¶ 23; *N. Side Bank* at ¶ 14-15. To establish an implied-in-fact contract, "a plaintiff must demonstrate that the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended."

*Snyder* at ¶ 23, quoting *Wajda v. M&J Automotive, Inc.*, 7th Dist. Mahoning No. 10-MA-7, 2010-Ohio-6584, ¶ 44.

{¶20} Only a party to a contract or an intended third-party beneficiary may bring an action on a contract. *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 (1991); *Wal-Mart Realty Co.*, 1st Dist. Hamilton No. C-160747, 2017-Ohio-9280, at ¶ 11; *Justice v. Nationwide Ins. Co.*, 10th Dist. Franklin No. 98AP-1083, 1999 Ohio App. LEXIS 2374, 10 (May 27, 1999). "It is well established that a contract is binding only upon the parties to the contract and those in privity with them and that an action for breach of contract can only be maintained by the parties to the contract and those deriving rights from the contracting parties." *Justice* at 10, quoting *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.*, 80 Ohio App.3d 53, 58, 608 N.E.2d 830 (8th Dist.1992).

{¶21} Privity has been defined as "such an identification of interest of one person with another as to represent the same legal right." *Montello v. Ackerman*, 11th Dist. Lake No. 2010-L-007, 2010-Ohio-3459, ¶ 33, quoting *Green v. Akron*, 9th Dist. Summit No. 18284, 1997 Ohio App. LEXIS 4425, 11-12 (Oct. 1, 1997). While spouses will not always be in privity with each other, privity can arise where individuals raise identical legal claims and seek identical rather than individually tailored results. *James v. Haydocy Automotive*, 10th Dist. Franklin No. 09AP-1066, 2010-Ohio-2562, ¶ 21. Here the record shows that Bob and Debbie were in privity. They both have the same interest in the contract regarding the exterior of their shared residence.

{¶22} Further, the failure to sign a written contract does not necessarily mean that a contract does not exist. *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 151-152, 375 N.E.2d 410 (1978); *Hocking Valley Community Hosp. v. Community Health Plan of Ohio*, 4th Dist. Hocking No. 02CA28, 2003-Ohio-4243, ¶ 16. If one party failed to execute a written contract, yet the parties proceeded to act as

7

if the contract was in effect, the contract is enforceable. *Hocking Valley* at ¶ 16. "Performance can substitute for execution of a written contract against the party who did not execute the contract, as well as against the party who executed the contract." *Id.* A party may prove the existence of an enforceable contract not only through a written agreement, but also "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of a contract." *Id.* at ¶ 15. Stride Studios' evidence showed that Bob and Debbie acted in a manner sufficient to show that she was a party to the contract. She was listed as a client in the contract, and an accompanying cover letter was addressed to both her and Bob at their home address. Ripley testified that Debbie attended all meetings, and text messages showed that she was actively engaged in the design process.

{¶23} The Alsfelders argue that the contract's express language precludes its enforcement against anyone who had not signed the contract. It states, "All services provided by the Designer are for the sole use and benefit of the Client. Nothing in this agreement shall create a contractual relationship with or a cause of action in favor of a third party against either Client or the Designer." This provision uses the term "Client," not signatory. The Alsfelders' argument ignores the plain language of the contract. Debbie was listed as a client on the front of the contract, and she was not a "third party."

{¶24} In sum, the evidence showed that Debbie was a proper party to the action and that the contract was enforceable against her. Therefore, the trial court did not err in overruling the Alsfelders' motion to dismiss her as a party. We overrule their first assignment of error.

### *Duty to Specifically Object to Magistrate's Decision*

**{¶25}** In their second assignment of error, the Alsfelders contend that the trial court erred in finding that they were liable under the contract. They argue that the evidence showed that no meeting of the minds had occurred because no concept was ever agreed upon by the parties. We hold that the Alsfelders waived this issue by failing to raise it in their objections to the magistrate's decision.

**{¶26}** Civ.R. 53(D)(b)(3)(ii) provides, "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objections." Additionally, Civ.R. 53(D)(3)(b)(iv) provides, "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless that party had objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

**{¶27}** The Alsfelders essentially raised two objections to the magistrate's decision. First, they argued that the magistrate erred in finding that Debbie was a party to the contract, which was the primary basis of their objections.

**{¶28}** Next, they stated,

> The Magistrate erred in denying Bob Alsfelder's counterclaim. There was disputed testimony that plans were received by Defendant Bob Alsfelder from Plaintiff. If Defendant Bob Alsfelder is held to be responsible for the payment of the invoice, then the documents prepared by Plaintiff, in accordance with the provision of the contract titled 'Ownership of Documents,' must be ordered to be made available to him.

In its judgment entry, the trial court ordered Stride Studios to turn over the documents to the Alsfelders.

9

{¶29} The Alsfelders did not specifically object to the magistrate's conclusion that they were liable under the contract. The arguments set forth in their second assignment of error fall outside the scope of the objections. Therefore, they forfeited all but a claim of plain error on appeal. *See U.S. Bank, Natl. Assn. v. Kasidonis*, 1st Dist. Hamilton No. C-190559, 2020-Ohio-6716, ¶ 18; *Neu v. Neu*, 1st Dist. Hamilton No. C-140170, 2015-Ohio-1466, ¶ 22.

{¶30} The Alsfelders have not raised the issue of plain error on appeal. "Where the appellant in a civil case does not properly invoke the plain-error doctrine, it cannot meet its burden on appeal, and we will not sua sponte undertake a plain-error analysis on its behalf." *See Cable Busters, LLC v. Mosley*, 1st Dist. Hamilton No. C-190364, 2020-Ohio-3442, ¶ 8, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19. Consequently, the Alsfelders have forfeited the right to plain-error review on appeal. *See U.S. Bank* at ¶ 18; *Cable Busters* at ¶ 8-9. We overrule their second assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its own entry this date.