[Cite as *Queen City Cleaning, L.L.C. v. I74 Wired, L.L.C.*, 2024-Ohio-1761.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| QUEEN CITY CLEANING, LLC, | : | APPEAL NO. C-230331 |
| | | TRIAL NO. A-2200140 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| I74 WIRED, LLC, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: May 8, 2024

*James R. Hartke* for Plaintiff-Appellant,

*Yonas and Phillabaum, LLC*, and *Hope Platzbecker* for Defendant-Appellee.

**WINKLER, Judge.**

{¶1}    In this civil appeal, plaintiff-appellant Queen City Cleaning, LLC, ("Queen City") appeals the trial court's grant of summary judgment in favor of defendant-appellee I74 Wired, LLC, ("I74 Wired") dismissing Queen City's complaint for breach of contract, promissory estoppel, unjust enrichment, and fraud.  Queen City raises two assignments of error, arguing that the trial court erred in not ruling on its motion to compel discovery or extend the timeline for discovery and in granting summary judgment.  For the following reasons, we overrule the first assignment of error, sustain the second assignment of error, reverse the judgment of the trial court, and remand the cause for further proceedings.

## Background

{¶2}    I74 Wired owns a commercial office building and leases that space to various business clients.  On May 1, 2021, I74 Wired entered into a contract with Queen City regarding the cleaning of its building and tenant spaces for a $3,900 monthly fee paid in two installments of $1,950 due on the 15th and 31st of each month.  The entirety of the parties' relationship is contained in a brief, three-page contract.

{¶3}    For about one month, Queen City cleaned the building, and the tenants would message I74 Wired's property manager or Queen City to arrange cleaning of their offices or alert them of trash accumulation, bathroom issues, and the like.  However, the parties' relationship quickly deteriorated.  About two weeks into the contract, on May 19, a tenant of I74 Wired complained that the tenant's computer was shattered and inoperable and blamed Queen City for destroying the computer.  I74 Wired first asked Queen City to compensate the tenant for the cost of a replacement computer and then later offered to split the cost.  Queen City denied breaking the

computer and the parties did not reach an agreement.[1]  The computer was eventually replaced.

{¶4}    On June 20, I74 Wired's property manager communicated to Queen City that "June 30 will be [Queen City's] last day," citing dissatisfaction with resolving the tenant's complaint about the computer and dissatisfaction with the cleaning of the building's parking lot.  Queen City replied that the contract has a 30-day notice period before the contract terminates and that it would continue cleaning until July 20.  On June 25, the owner of I74 Wired sent an email again terminating the contract and Queen City again replied that they would continue to clean through the 30-day period. I74 Wired responded by refusing those services, revoking Queen City's access to the building, and threatening to call the police for trespass if Queen City returned to clean the building.

{¶5}    That same day, Queen City sent I74 Wired a demand letter seeking $5,874.19, the total for five days of cleaning from June 15 to June 20, the 30-day notice period before termination, and costs of Queen City's cleaning supplies still in I74 Wired's building that were now inaccessible.  On July 1, Queen City sent I74 Wired an invoice for $6,477.38, the previous amount with a 2 percent late fee and tax added.  At some point prior to the lawsuit, I74 Wired offered to pay Queen City $1,950—the installment owed for the period of June 1 to June 15—but refused to pay any other amounts.

---

[1] The parties dispute whether the damaged equipment was a "monitor" or a "computer" throughout the litigation.  However, both terms are correct: the damaged computer photographed in the appellate record is an Apple iMac where the desktop computer is integrated with the monitor all in one unit.

**{¶6}** On January 14, 2022, Queen City filed a complaint against I74 Wired, alleging claims for breach of contract, breach of an implied-in-fact contract, unjust enrichment, and fraud. I74 Wired initially responded with a motion to dismiss arguing that Queen City lacked standing to sue because it was not a registered foreign limited liability company with the state of Ohio. After Queen City registered with the state of Ohio, the trial court dismissed I74 Wired's motion and I74 Wired answered the complaint and filed a counterclaim for breach of contract.

**{¶7}** The parties exchanged discovery that August, with discovery scheduled to close on October 18, 2022, in advance of an initial March 1, 2023 trial date. Queen City sent I74 Wired a set of 34 interrogatories on August 22. After I74 Wired responded, Queen City sent a second set of 22 interrogatories with subparts on October 11. I74 Wired objected to a number of these interrogatories, arguing they exceeded the 40-interrogatory cap set by Civ.R. 33. The parties disagreed as to whether the rule limited a party to 40 total interrogatories without leave of court or limited a party to 40 interrogatories per set. On December 19, Queen City moved the trial court to compel responses to the interrogatories.

**{¶8}** I74 Wired moved for summary judgment on all four of Queen City's claims on January 3, 2023. Queen City responded to the motion for summary judgment and sought a continuance to take additional discovery under Civ.R. 56(F). Queen City did not move for summary judgment on its claims.

**{¶9}** The trial court did not rule on either of Queen City's pending motions. Instead, the trial court held oral argument on I74 Wired's motion for summary judgment on May 15, 2023. At the close of the hearing, the trial court orally granted I74 Wired's motion in its entirety and requested I74 Wired's counsel to draft the order.

4

After the hearing, I74 Wired voluntarily dismissed its counterclaim. The trial court adopted a brief one-paragraph order granting summary judgment in favor of I74 Wired on all of Queen City's claims and dismissing the complaint in its entirety.

{¶10} Queen City now timely appeals.

## Law and Analysis

{¶11} Queen City raises two assignments of error. First, Queen City argues the trial court abused its discretion by not ruling on Queen City's motion to compel discovery or its Civ.R. 56(F) request for a continuance and instead ruling on I74 Wired's dispositive motion for summary judgment. Second, Queen City argues the trial court erred by granting I74 Wired's motion for summary judgment.

### I. The motion to compel discovery

{¶12} In its first assignment of error, Queen City argues the trial court abused its discretion by failing to rule on Queen City's motion to compel discovery and instead ruling on I74 Wired's dispositive motion for summary judgment. Queen City does not argue the merits of the trial court's decisions on its pending motions, it only assigns error to the timing of those decisions.

{¶13} When a trial court does not rule on a pending pretrial motion, it may ordinarily be presumed that the court overruled it. *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998). Where a party opposing summary judgment has a pending motion to compel, that party must either seek a continuance under Civ.R. 56(F) or otherwise include in its response to the motion for summary judgment some allegation that it is prejudiced because of the trial court's failure to rule on the pending motion to compel. *See Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, 166 N.E.3d 725, ¶ 16 (2d Dist.), quoting *Polivka v. Cox*, 10th Dist. Franklin

No. 02AP-1364, 2003-Ohio-4371, ¶ 23. Here, Queen City sought a continuance under Civ.R. 56(F). Because the trial court granted I74 Wired's motion for summary judgment, we presume the trial court denied the motion to compel and the requested continuance.

{¶14} We review the trial court's denial of both a motion to compel and a requested continuance under Civ.R. 56(F) under an abuse-of-discretion standard. *Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, ¶ 13 (1st Dist.) (reviewing the disposition of a motion to compel under an abuse-of-discretion standard), citing *State ex rel. The V Cos* at 469; *Midland Funding LLC v. Farrell*, 1st Dist. Hamilton No. C-120674, 2013-Ohio-5509, ¶ 10 (the same for request for a continuance under Civ.R. 56(F)). An "abuse of discretion" means an attitude that is "unreasonable, arbitrary, or unconscionable." *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An appellate court will reverse a trial court's decision that extinguishes a party's right to discovery where its decision is improvident and affects the discovering party's substantial rights. *Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996), quoting *Rossman v. Rossman*, 47 Ohio App.2d 103, 110, 352 N.E.2d 149 (8th Dist.1975).

{¶15} Under Civ.R. 56(F), a party opposing a motion for summary judgment may move for a continuance where that party needs more time to conduct discovery. The motion must be supported by an affidavit establishing the reasons for the requested continuance. Civ.R. 56(F); *Taft, Stettinius, & Hollister, LLP v. Calabrese*, 2016-Ohio-4713, 69 N.E.3d 72, ¶ 28 (1st Dist.). "General averments requesting a continuance for the purpose of discovery are insufficient as 'the party seeking the

Civ.R. 56(F) continuance must state a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance.' " *Farrell* at ¶ 10, quoting *BAC Home Loans Servicing, LP. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, 958 N.E.2d 194, ¶ 18 (12th Dist.), quoting *Silver v. Jewish Home of Cincinnati*, 190 Ohio App.3d 549, 2010-Ohio-5314, 943 N.E.2d 577, ¶ 20 (12th Dist.). While Queen City made a separate motion, it did not support the motion with an affidavit nor articulate any factual basis in that motion why it could not present sufficient documentary evidence at the summary-judgment hearing. The trial court would have been well within its discretion to deny the motion on this basis alone.

{¶16} Moreover, Queen City's statements in its memorandum in opposition to summary judgment suggested that its requested continuance or additional discovery would be unnecessary:

> Attached to this Memorandum are Answers of [Queen City] to discovery requests that support the description of fact issues and demonstrate that, not only has [I74 Wired] failed to carry its threshold burden to show no factual issues, but support that [Queen City] has, through its affidavit and Interrogatory, responses to Requests for Admission, and Document Production, highlighted the factual issues that require the Court to overrule [I74 Wired]'s motion.

These statements demonstrate Queen City believed it had sufficient evidence to defeat I74 Wired's motion for summary judgment based on the information it currently had. Thus, Queen City's substantial rights were not harmed by the court closing discovery and ruling on the dispositive motion for summary judgment.

**{¶17}** Consequently, the trial court did not abuse its discretion in impliedly denying Queen City's motion to compel or its Civ.R. 56(F) motion for a continuance and instead ruling on the dispositive motion for summary judgment. Accordingly, we overrule the first assignment of error.

## II. The motion for summary judgment

**{¶18}** In its second assignment of error, Queen City argues the trial court erred by granting summary judgment in favor of I74 Wired and dismissing Queen City's complaint. I74 Wired sought summary judgment against Queen City on its claims for breach of contract, breach of an implied-in-fact contract, unjust enrichment, and fraud. Because I74 Wired moved for summary judgment on all of Queen City's claims and the trial court's brief order granted I74 Wired's motion in its entirety, we address each claim in turn.

**{¶19}** We review the trial court's decision on summary judgment de novo. *Hefler v. Remke Mkts., Inc.*, 1st Dist. Hamilton No. C-200364, 2021-Ohio-2694, ¶ 7. Summary judgment is appropriate where (1) no genuine issue of material fact exists for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. *Id.*, quoting *Wal-Mart Realty Co. v. Tri-County Commons Assocs., LLC*, 1st Dist. Hamilton No. C-160747, 2017-Ohio-9280, ¶ 8.

**{¶20}** In the construction of a contract, a court's primary objective is to ascertain and give effect to the parties' intent, which can be found in the language they chose to employ. *Stride Studios, Inc. v. Alsfelder*, 2023-Ohio-1502, 219 N.E.3d 986, ¶ 17 (1st Dist.); *Hobart Corp. v. Waste Mgt. of Ohio*, 758 F.3d 757, 768 (6th Cir.2014),

quoting *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997). The court will give common words and phrases their ordinary meaning unless the totality of the contract reveals a contrary intent or a manifest absurdity results. *Foster Wheeler* at 361, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus; *In re Fifth Third Early Access Cash Advance Litigation*, 925 F.3d 265, 276 (6th Cir.2019). The court will read the writing as a whole and gather the intent of each from a consideration of the whole. *Stride Studios* at ¶ 17, citing *Foster Wheeler* at 361.

### A. Termination of the contract

{¶21} First, we address whether I74 Wired was entitled to summary judgment that it properly terminated the contract. The contract sets only one method of termination, providing "[t]he term of this agreement shall commence on 05/01/2021 and terminate upon either party providing 30 Day(s), written notice to the other party." The contract is silent on what grounds are appropriate or inappropriate to terminate the contract. By its plain language, the contract begins on May 1, 2021, and ends 30 days after one party sends notice to terminate the contract.

{¶22} I74 Wired tendered that termination notice when its property manager sent a text message on June 20, 2021, to Queen City's owners that Queen City was "fired."[2] This demonstrated I74 Wired's intent to terminate and satisfied the contract's requirements that the notice to terminate be in writing and provided to the

---

[2] Queen City initially argued that there was a genuine issue of material fact whether the property manager was duly authorized by I74 Wired to provide notice to terminate the contract on its behalf and consequently only the June 25 email from the owner of I74 Wired operated as written notice to terminate. However, at oral argument Queen City conceded the issue was irrelevant.

other party. Thus, that text message operated to end the contract on July 20, 2021, 30 days from the date of the text message.

{¶23} Queen City argues that the termination clause must be read to only permit termination of the contract for good cause because the contract contains an implied covenant of good faith and fair dealing, citing this court's decision in *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850, 839 N.E.2d 49, ¶ 27 (1st Dist.). The implied covenant of good faith and fair dealing in *Littlejohn* requires "the parties to deal reasonably with each other, and it applies where one party has discretionary authority to determine certain terms of the contract." *Great Water Capital Partners, LLC v. Down-Lite Internatl., Inc.*, 1st Dist. Hamilton Nos. C-150015 and C-150023, 2015-Ohio-4877, ¶ 13, quoting *DavCo. Acquisition Holding, Inc. v. Wendy's Internatl., Inc.*, S.D.Ohio No. 2:07-cv-1064, 2008 U.S. Dist. LEXIS 27108, 17 (Mar. 19, 2008), citing *Littlejohn*. Because the termination clause does not put any limitation on the reasons for termination, both parties must exercise their discretion in good faith.

{¶24} Queen City argues that whether I74 Wired acted in good faith is a mixed question of law and fact that cannot be resolved at summary judgment. However, this misreads *Littlejohn* and the cases that followed it. In *Littlejohn*, the issue was whether a lender who had a discretionary right to decline prepayment of a mortgage note acted unreasonably in refusing the borrower's offer to prepay. *Littlejohn* at ¶ 12-13. This court held that the implied covenant of good faith and fair dealing obligated the parties to deal reasonably with each other, but whether they did so was an unresolved issue of fact that made summary judgment improper in that case. *Id.* at ¶ 28. *Littlejohn* did not establish a rule barring summary judgment as a means

to resolve breach-of-good-faith allegations and requiring those allegations to be decided at trial only. *See Sims Buick-GMC Truck, Inc. v. GM LLC*, 876 F.3d 182, 187 (6th Cir.2017); *see also Definitive Solutions Co. v. Sliper*, 2016-Ohio-533, 60 N.E.3d 461, ¶ 17-18 (1st Dist.) (affirming summary judgment on the issue). To the contrary, summary judgment is a permissible vehicle to resolve such claims. *See O'Brien v. Ravenswood Apts., Ltd.*, 169 Ohio App.3d 233, 2006-Ohio-5264, 862 N.E.2d 549, ¶ 38 (1st Dist.).

**{¶25}** There is no genuine issue of material fact that I74 Wired did not breach the implied covenant of good faith and fair dealing in exercising the discretion in determining whether to terminate the contract. As articulated in *Littlejohn*, " '[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' " *Littlejohn* at ¶ 26, quoting Restatement of the Law 2d, Contracts, Section 205, Comment a (1981). On the other hand, "bad faith may consist of inaction, or may be the 'abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance.' " *Id.*, quoting Restatement of the Law 2d, Contracts, Section 205, Comment d. It is not necessarily a breach of the implied covenant of good faith and fair dealing when a party chooses to exercise discretion it bargains for. *Great Water Capital Partners* at ¶ 14.

**{¶26}** In the first termination notice, I74 Wired stated it was dissatisfied with Queen City's resolution of a tenant's complaint that Queen City broke the tenant's computer. Queen City denied breaking the computer, but who was at fault for the damage is irrelevant to I74 Wired having a good-faith dissatisfaction with Queen City's handling of the issue. I74 Wired brought the complaint to Queen City directly with a

proposed solution but was rebuffed. After Queen City refused, I74 Wired offered to split the cost of replacing the computer, which Queen City also refused. These undisputed facts demonstrate I74 Wired acted in good faith by attempting to resolve the issue and when it was not resolved in a satisfactory manner, it used its discretion to terminate the contract. Thus, I74 Wired did not breach the implied covenant of good faith and fair dealing by tendering notice to terminate the contract.

{¶27}    Consequently, the trial court correctly granted summary judgment to I74 Wired and against Queen City on the issue of whether the contract was properly terminated.

### B.  Payment under the contract

{¶28}    Second, we address whether I74 Wired was entitled to summary judgment that it did not breach the contract by not paying the $1,950 owed prior to tendering the notice to terminate and the $3,900 owed for the 30-day notice period.

{¶29}    We first address the $1,950 installment for services rendered prior to I74 Wired tendering notice to terminate the contract. It is not disputed that when I74 Wired terminated the contract on June 20, 2021, the installment due on June 15 had not yet been paid and that installment was owed as payment for cleaning services that were rendered from June 1 to June 15. Thus, I74 Wired breached its duty to pay Queen City for the work already completed. Consequently, the trial court erred in granting I74 Wired's motion for summary judgment because reasonable minds can come to but one conclusion and that conclusion is not adverse to Queen City.

{¶30}    During oral argument, I74 Wired asserted that Queen City is not owed that installment because prior to the suit, I74 Wired offered to pay Queen City the $1,950 and Queen City declined that offer and instead sued. However, "[a]n

unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect. * * * [T]he recipient's rejection of an offer 'leaves the matter as if no offer had ever been made.' " *Jones v. Sharefax Credit Union, Inc.*, 1st Dist. Hamilton No. C-210260, 2022-Ohio-176, ¶ 16, quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016), quoting *Minneapolis & St. Louis Ry. Co. v. Columbus Rolling Mill*, 119 U.S. 149, 151, 7 S.Ct. 168, 30 L.Ed. 376 (1886). There is simply no room for I74 Wired to argue that Queen City abandoned its claim to that $1,950 because it rejected I74 Wired's settlement offer and instead chose to sue.

{¶31} Next, we address the payment of amounts owed under the contract during the 30-day period after I74 Wired tendered the notice to terminate. As stated previously, once I74 Wired tendered written notice to terminate the contract to Queen City on June 20, 2021, the contract was set to terminate 30 days later on July 20. During that 30-day period, the provisions of the contract remained in force. The contract provides for a $3,900 monthly fee, paid in two installments of $1,950 due on the 15th and 31st of each month, with a 2 percent daily fee for any late payment, in exchange for cleaning services. Construing the contract as a whole, the parties' intent in the termination clause was for both get the benefit of their bargain for 30 days after one party decides to terminate the agreement. Thus, during the 30-day notice period, Queen City was still obligated to provide cleaning services and I74 Wired was still obligated to pay for those services.

{¶32} I74 Wired argues that it does not owe payment for the 30-day notice period because the contract contains a satisfaction clause. The contract provides, "[a]ny compensation will be subject to [I74 Wired] inspecting the completed services,

of [Queen City]. If any of the services performed by [Queen City] is incomplete, [I74 Wired] shall have the right to notify [Queen City], at which [sic] [Queen City] will correct the matter promptly." This clause governs incomplete work, not unsatisfactory work, and does not permit I74 Wired to withhold payment but rather allows I74 Wired to inspect Queen City's work prior to payment. If Queen City's work is incomplete, I74 Wired may complain prior to payment and Queen City is obligated to promptly resolve those complaints. If Queen City fails to do so, I74 Wired may sue for breach of contract, but there is no contractual right for I74 Wired to withhold payment.

{¶33} I74 Wired also argues that the contract cannot be read to require it have Queen City continue to clean the building during the termination period because a manifest absurdity would result as no reasonable commercial property owner would allow a vendor that it believes to have destroyed tenant property to continue working on its premises. A court will give common words "their ordinary meaning unless manifest absurdity results." *Foster Wheeler*, 78 Ohio St.3d at 361, 678 N.E.2d 519, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1976), paragraph two of the syllabus. No manifest absurdity exists in this scenario because the contract does not require I74 Wired to allow Queen City to enter the premises to clean. I74 Wired was free to bar Queen City from entering the building and refuse further cleaning services to protect tenant property. But the contract that the parties agreed to nevertheless requires I74 Wired to pay Queen City the contract rate during the termination period and has no exception for refusing Queen City's services.

{¶34} In sum, the trial court correctly granted summary judgment in favor of I74 Wired that it did not breach the contract when it served written notice to terminate. However, the trial court erred in granting summary judgment in favor of

I74 Wired finding that it did not breach the contract by failing to pay either the $1,950 installment owed at the time of the notice of termination, or the amounts owed during the 30-day notice period.

### C. Queen City's other claims

**{¶35}** The trial court also granted summary judgment in favor of I74 Wired and dismissed Queen City's other claims for breach of an implied-in-fact contract, unjust enrichment, and fraud.

**{¶36}** Queen City's claims for breach of an implied-in-fact contract and unjust enrichment are both foreclosed by the existence of an express contract. There is no dispute that the parties entered into an express contract when they both agreed to the written contract and that contract contains an integration clause. Because the parties expressed the terms of their agreement in writing, there is no implied contract. *See N. Columbiana Cty. Community Hosp. Assn. v. Ohio Dept. of Youth Servs.*, 38 Ohio St.3d 102, 104, 526 N.E.2d 802 (1988), quoting *Linn v. E. C. Ross & Co.*, 10 Ohio 412, 414 (1841). Similarly, "[i]t is clearly the law in Ohio that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract[.]" *Lehigh Gas-Ohio, LLC v. Cincy Oil Queen City, LLC*, 2016-Ohio-4611, 66 N.E.3d 1226, ¶ 24 (1st Dist.), quoting *Ryan v. Rival Mfg. Co.*, 1st Dist. Hamilton No. C-810032, 1981 Ohio App. LEXIS 14729 (Dec. 16, 1981). Thus, the trial court properly granted summary judgment against Queen City on its breach-of-implied-in-fact-contract and unjust-enrichment claims.

**{¶37}** Queen City's fraud claim is a recapitulation of its breach-of-contract claim, seeking recovery for the same economic loss contemplated by the contract, but recasting I74 Wired's termination of the contract as fraudulently breaching the

15

contract, which is not a recognized tort in Ohio. *Gator Dev. Corp. v. VHH, Ltd.*, 1st Dist. Hamilton No. C-080193, 2009-Ohio-1802, ¶ 18, citing *Ketcham v. Miller*, 104 Ohio St. 372, 372, 136 N.E. 145 (1922), and *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151-154, 684 N.E.2d 1261 (1996). Consequently, the trial court properly granted summary judgment against Queen City on its fraud claim.

## Conclusion

**{¶38}** In conclusion, we overrule the first assignment of error and affirm the trial court's implicit denial of Queen City's motion to compel discovery and its denial of the motion for a continuance under Civ.R. 56(F). We overrule in part and sustain in part the second assignment of error. We affirm the portion of trial court's judgment granting summary judgment in favor of I74 Wired with respect to the issue of whether I74 Wired properly terminated the contract. We reverse the portion of the trial court's judgment granting summary judgment that I74 Wired did not breach the contract by refusing to pay the first $1,950 installment owed at the time of termination and that I74 Wired did not breach the contract by refusing to pay the amounts owed under the contract during the 30-day notice period. We affirm the trial court's judgment dismissing Queen City's claims for breach of an implied-in-fact contract, unjust enrichment, and fraud. We remand the cause to the trial court for further proceedings on the remaining claims.

Judgment affirmed in part, reversed in part, and cause remanded.

**ZAYAS, P.J.,** and **CROUSE, J.**, concur.

Please note:
    The court has recorded its entry on the date of the release of this opinion.

16